[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This limited contested dissolution of marriage action with a return date of May 1, 2001, was heard on March 5, March 6, and April 3, 2002. The parties were married on May 3, 1998, in Madison, Connecticut, there are no minor children issue of the marriage and no minor children have born to the wife since the date of the marriage. Neither party is receiving aid from the state of Connecticut. The marriage between the parties has broken down irretrievably and there is no hope of reconciliation. The court dissolves the marriage on the grounds of irretrievable breakdown.
The plaintiff wife is forty-six years of age and she is a high school graduate. This is her third marriage. She has some minor health problems, but they do not prevent her from working on a full-time basis. She is presently employed as a real estate agent at Beazley Company. The plaintiff, in her updated financial affidavit of April 3, 2002, states her average gross real estate agent income is $384 a week; this amount does not include a commission check she will shortly receive in the amount of $7800. The plaintiff also receives $140 a week from the sale of her interest in a trailer park that she inherited prior to the marriage. The total net income on her updated affidavit is $524 per week.
At the commencement of the trial, and for the previous eight-teen months, the plaintiff was also employed as a home companion for an CT Page 5803 elderly woman. Unfortunately, this woman died during the course of the trial. The plaintiff's net income as a home companion was $442 per week. The court finds the plaintiff continues to have the capacity to earn this companion income.
The house in which the plaintiff lives, located at 151 Goebel Road, Hamden, Connecticut, is owned by a trust that the plaintiff created for the benefit of her children on February 24, 1996. The plaintiff is the trustee. This house was previously owned by the plaintiff and her mother in survivorship; her mother died in March 1991. A certificate of jointly owned property has not been obtained by the plaintiff. The plaintiff's affidavit reflects only one half of the value of the property; however, the court concludes that the entire value of the property is attributable to the trust. The property is unencumbered and has a value of $159,000.
The plaintiff owns a 1997 Ford Explorer, which her son uses, valued at $15,000. In July 2001, the plaintiff provided $17,000 cash to purchase a 1996 Audi that is titled in her brother's name.
The cash used to purchase the Audi was in the possession of the plaintiff on May 31, 2001, the date of a pendente lite hearing regarding alimony. The cash was not shown on the sworn financial affidavit she submitted on that date.
The plaintiff also owns two diamond engagement rings, including the one given to her by the defendant. She values both rings at $10,000. The ring given to the plaintiff by the defendant has been appraised and has a retail replacement value of $13,500. (Defendant's Exhibit T).
The plaintiff owned land in Arizona, acquired prior to the marriage, that she valued on her May 31, 2001, affidavit at $82,000. She sold this land in July 2001 and received $72,000. In violation of automatic court order 1,[1] the plaintiff disbursed $20,000 of this money to herself, which she has spent, and gave $50,000 to her son for his college education. The only liquid asset shown on her affidavit is $426 in two bank accounts.
It is undisputed that while the parties were together the defendant made payments, totaling approximately $25,000, for college tuition for the plaintiff's son. The defendant testified he made these payments pursuant to an agreement with the plaintiff under which she would reimburse him for the payments upon the sale of her land in Arizona. The court finds this testimony credible.
The defendant husband is fifty-two years old and he is a high school graduate. This is his third marriage, although his first two marriages CT Page 5804 were with the same woman. The plaintiff has been an excavating contractor since the mid-1970s. In addition to his excavating business, the defendant, in 1996, entered into a partnership to sell modular homes. His average gross income is $800 a week; his net income is $767 a week.
When the parties married, the defendant owned a home in Chester, Connecticut. After the marriage the plaintiff continued to reside in Hamden with her son and the defendant continued to reside at his home in Chester with his daughter. The parties entered into this arrangement so the children could graduate from their respective high schools. On August 25, 2000, the defendant sold his house in Chester and received net proceeds of $129,484. The defendant testified that approximately $70,000 of these proceeds was spent on tuition for the plaintiff's son and living expenses of the parties; the court finds this testimony credible. What is now left of those proceeds, $58,400, is in a bank account under the name of the defendant's son that is shown on the defendant's financial affidavit. The defendant owns a 1995 Jeep which has been in the possession of the plaintiff since the parties separated in April 2001.
While the parties maintained separate houses, they paid for their respective expenses. Problems arose after the parties began living together at the plaintiff's home in Hamden. The plaintiff wanted the proceeds from the sale of the defendant's home to be placed in a joint account. The plaintiff believed that the parties would build a new house, her `dream house', and she was disappointed when this did not happen. The plaintiff also testified that the defendant never gave her money for household expenses. The defendant testified he made adequate provisions to support the household by giving the plaintiff check writing privileges and credit cards. He also believed the plaintiff spent money excessively.
The plaintiff claims the marriage broke down because of a lack of communication between the parties and excessive secrecy on the part of the defendant regarding his business affairs. The defendant claims that the marriage broke down when the plaintiff reneged on the agreement regarding reimbursement of college tuition. Having considered the evidence, the court declines to assess fault against either party for the breakdown of the marriage.
Before addressing the parties' claims for relief, the court is compelled to comment on its assessment of the plaintiff's demeanor, attitude and credibility. The court concludes the plaintiff's expectations in the outcome of this case have overwhelmed her veracity. As noted, the plaintiff's sworn financial affidavit of May 31, 2001 omitted $17,000 cash that was in her possession. The plaintiff's financial affidavit filed on March 5, 2002, indicated weekly income from CT Page 5805 Beazley Company of $116 per week. When questioned about this financial affidavit, she admitted that it was a "stale" affidavit, current only as of the middle of December 2001. On this affidavit the total of the balances for her MBNA, Discover, GE, Exxon Mobile credit cards totaled $8,422. On an "updated" affidavit dated and filed on April 3, 2002, her weekly income from Beazley Company is shown as $384 and the balances of the four credit cards totaled $25,294.
When the court questioned the plaintiff regarding the $17,000 cash, which she testified she kept in a can under her bed, the plaintiff's responses were contradictory and incredible. During the trial the plaintiff admitted that she lied, while under oath, in depositions conducted by the defendant. She also admitted that she bought the Audi, using the cash kept under her bed, and put the title in her brother's name to hide the asset from her husband. This action was another violation of automatic court order 1.
Portions of her testimony on direct were shown to be false during cross-examination. The plaintiff was an agent involved in the sale of the defendant's home in Chester and she repeatedly testified that she never received a commission. A representative from Beazley Company testified she did, in fact, receive a commission. The commission check, in the amount of $3,062.50, endorsed by the plaintiff, was admitted as an exhibit. (Defendant's Exhibit J). The plaintiff testified that her checking account was not "underwater" when she deposited the $20,000 from the sale of her Arizona land, however her checkbook ledger shows the account had a negative balance of $10,749 at the time of the deposit. (Defendant's Exhibit L).
In considering the claims for relief and in formulating its orders, the court has carefully considered the provisions of General Statutes §46b-81 regarding assignment of property, § 46b-82 regarding alimony and § 46b-62 regarding counsel fees.
The plaintiff's first claim for relief is for a lump sum alimony award in the amount of $60,000. The premise for this award is the plaintiff's assertion that for three years she assisted the defendant in his modular home business by distributing brochures, answering telephone inquiries, meeting with clients and quoting prices. The court finds there was insufficient credible evidence to justify an award of lump sum, or periodic, alimony to the plaintiff.
In her second claim for relief, the plaintiff asks the court to transfer to her a 1995 Jeep currently in her possession. This vehicle was purchased by the defendant prior to the marriage and he asks that it be returned to him. The plaintiff owns a 1997 Explorer that she lets her son CT Page 5806 use. In July 2000, the plaintiff spent $17,000 to buy a 1994 Audi that is titled in her brother's name; however, she testified she has use of it. The defendant drives a 1987 Ford valued at $1500. The court concludes it would be inequitable for the plaintiff to retain the 1995 Jeep.
The plaintiff's third claim for relief concerns health insurance. She seeks reimbursement of certain unreimbursed medical expenses and she requests that the defendant pay her health insurance premiums for three years. Up until May 24, 2001, the parties, and their children, were covered by a group health insurance policy obtained through the plaintiff's employer. The policy was issued to the plaintiff since she was the employee of the company. Premium billings were sent to her home in Hamden. The premium bills were paid by the defendant when the parties lived together. The defendant was not allowed to enter the Hamden home after April 6, 2001. The plaintiff claims that she gave the premium bills to the defendant's daughter. The premiums were not paid and the policy was canceled effective May 24, 2001. The defendant subsequently obtained replacement insurance coverage when he heard of the cancellation. The court finds that the plaintiff bears more responsibility than the defendant for the policy cancellation.
There was a five month gap in coverage during which the plaintiff claims she incurred $5152 in unreimbursed medical bills for which she requests payment from the defendant. The court has carefully reviewed Plaintiff's Exhibit 71 which contains the bills and a summary of them. The court finds that $4196 is for dental services that would not have been covered under the cancelled policy since it did not have dental coverage. Considering all of the evidence, and the pendente lite alimony paid by the defendant, the court does not believe it would be equitable for the defendant to reimburse the plaintiff for any portion of her unreimbursed medical bills. The court declines to order the defendant pay health insurance premiums for the plaintiff.
The plaintiff's final claim is for attorney's fees and will be addressed later. The defendant has filed proposed orders and two amendments/addendums. The court has considered each of the defendant's claims.
The defendant seeks return of certain personal property that he claims is in the possession of the plaintiff. Since April 6, 2001, the plaintiff has not permitted the defendant to enter the home in Hamden where they both lived. The defendant did not have prior notice that he would be excluded from the home. The defendant claims that certain items of his personal property were not returned to him and the plaintiff claims she doesn't have them. In formulating its orders, the court has considered the conflicting testimony of the parties regarding the personal CT Page 5807 property.
The court does not have jurisdiction to issue an order regarding savings bonds, owned by the defendant's son, that were in the possession of the defendant and are now missing. The defendant's son is not a party to this action and the bonds are not part of the marital estate.
The defendant asks for an order regarding an airline voucher he owned that was used by the plaintiff's son without his permission. The plaintiff's son is not a party and the court concludes it does not have jurisdiction to consider the matter.
The defendant requests the plaintiff pay him $25,000 to reimburse him for the money he paid for the plaintiff's son's college tuition. This $25,000 payment, and the agreement under which it was made, are appropriate circumstances for the court to consider in bringing about an equitable resolution of the marital issues. The plaintiff's violations of the automatic court order by alienating her cash and sale proceeds, which frustrate the court's ability to order a lump sum payment, are also appropriate circumstances to be considered. To equitably resolve these issues the court concludes the plaintiff should pay lump sum alimony to the defendant by way of monthly payments. Although repayment, not alimony, was requested by the defendant, the court determines that an order of lump sum alimony is the appropriate relief. See Porter v.Porter, 61 Conn. App. 791 (2001).
To avoid rewarding the plaintiff for her violations of the automatic court order, and to compensate the defendant for delayed reimbursement, the lump sum alimony should include an interest component. The legal rate of interest stated in § 37-1, eight percent, will be utilized. The plaintiff will be permitted to pay the lump sum alimony over forty-eight months. To amortize the sum of $25,000 over forth-eight months, with eight percent interest, requires a monthly payment of $610.32;[2] the total of the payments is $29,295. The plaintiff will be ordered to pay the defendant $29,295 as lump sum alimony by way of monthly payments of $610.32. The court specifically finds the plaintiff has sufficient net income and earning capacity to make these payments. Provision is made in the order for the plaintiff to satisfy this obligation by a reduced present payment of $25,000, in the event she is able to obtain the funds.
On May 31, 2001, the defendant was ordered to pay to the plaintiff pendente lite alimony in the amount of $50 per week. The defendant requests the court order the plaintiff return to the defendant all sums paid under the pendente lite order. This request follows the plaintiff's testimony that she did not include $17,000 cash she had in her possession on the financial affidavit she submitted at the pendente lite hearing. CT Page 5808 The court is without authority to enter such an order; retroactive modification of pendente lite alimony awards is not permitted. See Elliotv. Elliot, 14 Conn. App. 541 (1998).
Both parties seek an award of counsel fees. The plaintiff seeks $20,000 and the defendant seeks $17,500, in addition to deposition fees. The court concludes that it is fair and appropriate for both parties to pay their respective attorneys' fees.
 ORDERS
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The plaintiff is to return to the defendant his 1995 Jeep Grand Cherokee within thirty days of the date of judgment.
3. The plaintiff shall pay to the defendant the lump sum alimony of $29,295 by way of monthly payments of $610.32, commencing June 1, 2002, payable on the first of each month thereafter. The plaintiff may satisfy this obligation, at her sole option, by paying the lump sum of $25,000 to the defendant on or before June 1, 2002. Said monthly payments are nonmodifiable and they are not deductible by the plaintiff for income tax purposes.
4. The plaintiff is to make available to the defendant the following items of personal property, which are assigned to him, within thirty days of the date of judgment: All of the defendant's rifles and pistols, a Xerox copy machine, a Macintosh computer, an HP scanner, Columbia men's bicycle, one large potted tree, the one year old Sony Trinitron television and the HP3410 notebook computer. Except for the television and HP computer, this order is pursuant to a stipulation of the parties.
5. Except as provided for herein, each party shall retain the assets shown on their respective financial affidavits. Each party is to be responsible for and hold the other party harmless from, the liabilities shown on their respective financial affidavits.
6. If the plaintiff wishes to take advantage of COBRA provisions of the defendant's health insurance policy, he is to cooperate in obtaining the coverage that may be available to the plaintiff. The premiums for the plaintiff's coverage are to be her sole responsibility.
7. The plaintiff's former married name of Donna Pecoraro is restored to her.
Domnarski, J. CT Page 5809